**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEAMA EL SAYED RAMADAN;
GASSER HISHAM EL GENDY,
                    *Petitioners,*

            v.

PETER D. KEISLER,* Acting
Attorney General,
                    *Respondent.*

No. 03-74351

Agency Nos.
A79-561-874
A79-561-875

ORDER

Filed September 28, 2007

Before: Harry Pregerson, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

---

## ORDER

The panel has voted to deny the petition for rehearing and the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc. A judge of the court requested a vote on whether to rehear the case en banc. However, the en banc call failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

---

*Peter D. Keisler is substituted for his predecessor, Alberto R. Gonzales, as Acting Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

13329

The petitions for rehearing and rehearing en banc are denied.

---

O'SCANNLAIN, Circuit Judge, joined by KOZINSKI, KLEINFELD, TALLMAN, BYBEE, BEA, CALLAHAN, M. SMITH, JR., and IKUTA Circuit Judges, dissenting from the denial of rehearing *en banc*:

In a feat of interpretive creativity, the Court in this case has transformed a discretionary determination of an Immigration Judge ("IJ") into a question of law, thereby claiming jurisdiction over a swath of immigration cases hitherto beyond our purview. Were such jurisdiction in fact given to us by Congress, we would be obligated to accept the task. But Congress has expressly withdrawn our power to review such discretionary determinations, and by reviewing the merits of the IJ's ruling, the panel has transgressed the clear limits of our constitutional jurisdiction. For this reason, and because the panel's opinion conflicts with the decisions of the seven other circuits that have considered this issue, I must dissent from our order declining to rehear this very significant case *en banc*.

I

Here,[1] the panel addressed whether asylum claims based on changed circumstances raise "questions of law" giving rise to appellate jurisdiction under the REAL ID Act.

---

[1]The panel issued an earlier opinion dismissing Ramadan's appeal of the IJ's denial of Ramadan's application for asylum based on changed circumstances, because such matters "do[ ] not present any 'questions of law.' " *Ramadan v. Gonzales*, 427 F.3d 1218, 1222 (9th Cir. 2005) (*Ramadan I*), *withdrawn by* 479 F.3d 646 (9th Cir. 2007) (*Ramadan II*) (holding that a changed circumstance determination falls within the term "questions of law").

Prior to the passage of the Real ID Act, 8 U.S.C. § 1158(a)(3) precluded our review of any determination relating to the application of the one-year bar. Section 106 of the Real ID Act of 2005 restores our jurisdiction over "constitutional claims or questions of law." Our jurisdiction therefore turns on whether the "changed circumstances" claim presents a "question of law": if it does, section 106 restores our jurisdiction, but if it does not, the § 1158(a)(3) jurisdictional bar applies and we lack jurisdiction.

*Ramadan v. Gonzales*, 479 F.3d 646, 650 (2007) (*Ramadan II*) (footnotes and citations omitted). Asserting that "this case does not involve a[n unreviewable] challenge to the agency's exercise of discretion," *id.* at 654, the panel held that "Ramadan's challenge to the IJ's determination that Ramadan failed to show changed circumstances is a reviewable mixed question of law and fact," *id.* at 656.

The statutory text makes clear that the decision to consider an untimely application for asylum based on changed circumstances is solely a discretionary one,[2] and is not reviewable as a "mixed question of law and fact." The relevant statute states that an untimely "application for asylum of an alien *may* be considered . . . if the alien demonstrates *to the satisfaction of* the Attorney General either the existence of changed circum-

---

[2]In contrast, whether an alien is "eligib[le] for discretionary relief" is a question of law. *INS v. St. Cyr*, 533 U.S. 289, 304 (2001) ("In *Heikkila v. Barber*, the Court observed that the then-existing statutory immigration scheme 'had the effect of precluding judicial intervention in deportation cases *except insofar as it was required by the Constitution*,'-and that scheme, as discussed below, did allow for review on habeas of questions of law concerning an alien's eligibility for discretionary relief." (citation omitted)). Because Ramadan only challenged the IJ's determinations upon discretionary review, she does not raise a legal question of eligibility. *See Ramadan II*, 479 F.3d at 650 ("Ramadan argues that the IJ should have considered her asylum application because changed circumstances materially affected her eligibility for relief.").

stances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application . . . ." 8 U.S.C. § 1158(a)(2)(D) (emphasis added).

Both the word "may" and the phrase "to the satisfaction of" imply that the decision is permissive only, thus creating an opportunity to request relief but not a judicially enforceable right to obtain it. *See Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005) (interpreting 8 U.S.C. § 1158(a)(2)(D) and noting that "[p]ermissive language that refers to demonstrating something to the agency's 'satisfaction' is inherently discretionary"). The text plainly vests a discretionary power to consider an untimely application in the Attorney General and in those acting with his authority. *See Jay v. Boyd*, 351 U.S. 345, 351 n.8 (1956) (allowing the Attorney General to delegate authority in immigration matters). Although *whether* the Attorney General has discretion is a legal question, the manner in which his discretion is exercised is not. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) ("It is important to emphasize that we are not here reviewing and reversing the manner in which discretion was exercised. If such were the case we would be discussing the evidence in the record supporting or undermining the alien's claim to discretionary relief.").

## II

The plain text has led *all* of our sister circuits that have considered the issue to conclude that a changed circumstances determination is one of discretion. *See Vasile*, 417 F.3d at 768-69 ("Perhaps Vasile would like to shoehorn his [changed circumstances] claim into the 'question of law' category, but it simply does not fit there. . . . [T]he decision to extend the deadline for filing an asylum application is a discretionary one."); *see also Zhu v. Gonzales*, No. 05-60891, 2007 WL 2083712, at *5 n.31 (5th Cir. July 23, 2007) (expressly disagreeing with *Ramadan II* and observing that a federal appel-

late court "do[es] not have jurisdiction to review timeliness determinations that are based on an assessment of the facts and circumstances of a particular case"); *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 332 (2d Cir. 2006) ("This petitioner's challenge [based on changed circumstances] is merely an objection to the IJ's factual findings and balancing of factors in which discretion was exercised."); *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006) ("Ferry's argument that his pending adjustment of status application qualified as either a changed or extraordinary circumstance to excuse his untimely asylum application is a challenge to an exercise of discretion that remains outside our scope of review."); *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006) ("Petitioners' claim that she met her burden of demonstrating changed circumstances materially affecting asylum eligibility or extraordinary circumstances relating to the delay challenges . . . [an] exercise of discretion."); *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005) ("Under the statutory framework . . . whether . . . [changed] circumstances exist is a discretionary judgment of the Attorney General."); *Chacon-Botero v. U.S. Attorney Gen.*, 427 F.3d 954, 957 (11th Cir. 2005) ("The timeliness of an asylum application is not a constitutional claim or question of law covered by the Real ID Act's changes.").

Yet the panel in *Ramadan II* insisted on reading the statute differently: "[W]e hold that the 'changed circumstances' question presented by Ramadan's petition is a question of *the application of a statutory standard* to undisputed facts, over which we have jurisdiction." 479 F.3d at 650 (emphasis added). Thus, "the application of the one-year bar," *id.*, requires the disposition of a mixed question of law and fact— not simply an exercise of discretion based on factual determinations. This anomalous reading of the statute permitted the panel to avoid the fact that "Section 106 [of the Real ID Act] does not restore jurisdiction over discretionary determinations." *Id.* at 654; *see Trujillo v. Gonzales*, Nos. 04-71733, 05-

75857, 2007 WL 1725707, at *1 (9th Cir. June 13, 2007) (citing *Ramadan II*, 479 F.3d at 654, for this very proposition).

The panel acknowledged that the plain text of the Real ID Act does not remove the jurisdictional bar, but proceeded to engage in interpretive gymnastics based upon a manufactured constitutional conflict. Reading a decision to consider relief based on changed circumstances to be a mixed question of law, the panel noted that "mixed questions of fact and law— those involving an application of law to undisputed fact— should be provided meaningful judicial review, lest serious constitutional questions be raised." *Ramadan II*, 479 F.3d at 652 (citing *INS v. St. Cyr*, 533 U.S. 289 (2001)). The panel held that a constitutional conflict could be avoided only by reading the term "questions of law" in the Real ID Act to include claims of changed circumstance under 8 U.S.C. § 1158(a)(2)(D). "As indicated by our discussion of *St. Cyr*, our conclusion is compelled by principles of constitutional avoidance, precluding a constitutionally suspect alternative." *Id.* at 654.

But the evident way to avoid a constitutional conflict is to read the plain text, which makes clear that what is being challenged is solely the discretionary weighing of evidence by the IJ. Indeed, all other circuits to consider the issue have concluded that the federal courts of appeals lack jurisdiction over these questions—even after passage of the REAL ID Act. *See Sukwanputra*, 434 F.3d at 635 ("We therefore agree with our sister courts that, despite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstance that would excuse his untimely filing.").[3]

---

[3]*See also Ferry*, 457 F.3d at 1130 (holding that the petitioner's changed circumstance argument constituted a "challenge to an exercise of discretion that remains outside our scope of review"); *Ignatova*, 430 F.3d at 1214 (holding that "the decision whether . . . [changed] circumstances

Furthermore, the panel's interpretation of "to the satisfaction of" as simply identifying "*who* is to make the decision," rather than creating discretion, treats this phrase as mere surplusage. *Ramadan II*, 479 F.3d at 655. Running afoul of the "cardinal principle of statutory construction," *Williams v. Taylor*, 529 U.S. 362, 404 (2000), that it is "our duty 'to give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)), the panel's construction reads the words "to the satisfaction of" into thin air.

The panel attempts to support its singular result by citing the Second Circuit's decision in *Chen*, 471 F.3d 315 (dismissing a petition for review of the denial of asylum for lack of jurisdiction). The *Chen* court suggested in *dicta* that the phrase "questions of law" in the REAL ID Act may need to be read to include more than just questions of statutory interpretation, in order to avoid a Suspension Clause issue. But the court expressly declined to decide the matter:

> In deciding this case, we need not determine the precise outer limits of the term "questions of law" under the REAL ID Act, nor need we define the full extent of "those issues that were historically reviewable on habeas," or what the Suspension Clause itself requires on direct, non-habeas review of a removal order. Rather, it is enough for us to hold simply that, although the REAL ID Act restores our jurisdiction

---

exist" is one of the "discretionary decisions [that] continue to be unreviewable by this court"); *Chacon-Botero*, 427 F.3d at 957 ("We agree with the Seventh Circuit's conclusion and hold we cannot review the IJ's and BIA's denial of Chacon-Botero's asylum claim, even considering the changes in the Real ID Act."); *Vasile*, 417 F.3d at 768 ("We conclude that we cannot review the BIA's denial of [Vasile's] asylum claim, even in light of the changes in the judicial review provisions contained in the REAL ID Act of 2005." (citation omitted)).

to review "constitutional claims or questions of law," we remain deprived of jurisdiction to review decisions under the INA when the petition for review essentially disputes the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion and raises neither a constitutional claim nor a question of law.

*Id.* at 328-29 (citations omitted).

Even a brief perusal of *Chen* makes clear that its holding does not support the panel's decision in *Ramadan II*. The Second Circuit specifically referred to "the IJ's *discretionary and factual determination*, with respect to petitioner's asylum claim, that petitioner failed to establish either changed or extraordinary circumstances under 8 U.S.C. § 1158(a)(2)(D)." *Id.* at 323 (emphasis added). The court concluded that the REAL ID Act lifted § 1158's jurisdictional bar as to constitutional questions and questions of law but did not allow courts to review petitions based on discretion and fact. *Id.* at 329. The *Chen* court expressly rejected the petitioner's attempt to transform a factual claim into a legal question by characterizing it as a challenge to "application of law":

> In an effort to come within the restored jurisdiction for constitutional claims and questions of law, petitioner asserts that the IJ "fail[ed] to apply the law," and argues that a claim of failure to apply the law raises a question of law, if not also a constitutional claim of violation of due process. *A petitioner cannot overcome the lack of jurisdiction to review by invocation of such rhetoric.*
>
> . . . Accordingly, we conclude that, on this record, petitioner's mere assertion that the IJ and the BIA "fail[ed] to apply the law" does not convert a mere disagreement with the IJ's factual findings and exer-

cise of discretion into a constitutional claim or a question of law.

*Id.* at 330-31.

In addition to misinterpreting the Second Circuit's decision in *Chen*, the panel attempts to enlist legislative history to explain away the statutory text. The lack of significance we should attach to such history is illustrated by the discordant uses of legislative history presented in the panel's first and second opinions. In the now-withdrawn opinion, *Ramadan I*, the panel wrote:

> Should there be any doubt about the meaning of the term "questions of law" in the REAL ID Act, the legislative history makes it abundantly clear this term refers to a narrow category of issues regarding statutory construction. For example, the Conference Committee Report states "[T]he purpose of [§ 106] is to permit judicial review over those issues that were historically reviewable on habeas— *constitutional and statutory-construction* questions, not discretionary or factual questions." Conference Committee Statement, 151 Cong. Rec. H2813-01, H2873, 2005 WL 1025891 (May 3, 2005) (emphasis added).

427 F.3d 1218, 1222 (9th Cir. 2005) (*Ramadan I*), *withdrawn by* 479 F.3d 646 (*Ramadan II*). Yet in its revised opinion, herein *Ramadan II*, the panel stated:

> Because the Conference Report indicates congressional adherence to *St. Cyr*'s constitutional mandates, and because preclusion of judicial review over mixed questions of law and fact would raise serious constitutional questions under *St. Cyr*, the legislative history indicates that Congress intended to grant review over such questions. . . . [T]he Conference

> Report explicitly envisions judicial review of mixed questions of law and fact, stating: "When a court is presented with a mixed question of law and fact, the court should analyze it to the extent that there are legal elements, but should not review any factual elements."

479 F.3d at 653 (citation omitted). The panel's effort to draw support from legislative history fails.

### III

The panel's decision creates a split between our circuit and all seven other circuits to consider the issue, which, one by one, have rejected the argument that changed circumstances claims under 8 U.S.C. § 1158(a)(2)(D) are cognizable under the REAL ID Act. But even more troubling than this split, the panel's decision defies the statutory text, unnecessarily creates a constitutional conundrum, and places within our jurisdiction an array of immigration appeals that Congress does not permit us to review.

For the foregoing reasons, I respectfully dissent from our unfortunate decision not to rehear this case *en banc*.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.