**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

CIARAN FERRY,

     Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General of the United States,

     Respondent.

_____

CIARAN FERRY,

     Petitioner-Appellant,

v.

SCOTT WEBBER, Director of Bureau
of Inspections and Customs
Enforcement, ALBERTO R.
GONZALES, Attorney General of the
United States, TOM RIDGE, Secretary
of the Department of Homeland
Security, EDUARDO AGUIRRE, JR.,
Acting Director of Bureau of
Citizenship and Immigration Services,
MICHAEL J. GARCIA, Assistant
Secretary of Bureau of Immigration
and Customs Enforcement, MIKE
COMFORT, District Director of the
Immigration and Naturalization
Service, JAMES P. VANDELLO,
Immigration Judge, Executive Office
for Immigration Review,

     Respondents-Appellees.

Nos. 03-9526/04-9555

No. 05-1014

PETITION FOR REVIEW FROM THE BOARD OF
IMMIGRATION APPEALS
(A95-424-147)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 03-N-580 (PAC))

Eamonn Dornan of Smith, Dornan & Dehn, PC, New York, New York (Jeff Joseph of Joseph Law Firm, PC, Denver, Colorado; Thomas J. Burke, Jr. of Jones & Keller, Denver, Colorado, with him on the briefs) for Petitioner-Appellant.

Carl H. McIntyre, Jr., Senior Litigation Counsel, (Peter D. Keisler, Assistant Attorney General; Richard M. Evans, Assistant Director, Office of Immigration Litigation, with him on the briefs), United States Department of Justice, Washington, D.C., for Respondents-Appellees.

Before **TACHA**, Chief Judge, **SEYMOUR**, and **BRISCOE**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Ciaran Ferry, a native of Northern Ireland, entered the United States in December 2000 under the Visa Waiver Program ("VWP"), 8 U.S.C. § 1187, a program which provides an expedited admission process for aliens from certain countries and authorizes approved aliens to stay in the United States for up to ninety days. The VWP also provides an expedited removal process. Before an alien may enter the United States pursuant to the VWP, the alien is required to sign a waiver of his right to contest removal other than through an application for

asylum. § 1187(b)(2). Ferry remained in the United States long after the ninety days he was authorized under the VWP had expired. Eventually, he filed for an adjustment of status with the Department of Homeland Security ("DHS") based on his marriage to a United States Citizen.[1] On January 30, 2003, before a decision was rendered on Ferry's application for adjustment of status, the DHS arrested Ferry[2] and issued an administrative order of removal on the basis that Ferry had overstayed the ninety days authorized under the VWP. Ferry remained in DHS custody for almost twenty-three months before he was deported to Ireland on December 21, 2004.

The three consolidated appeals we consider here arise from several procedural postures, but they all represent Ferry's efforts to challenge the DHS's removal order and the validity of his prolonged detention, as well as his attempts to obtain asylum, relief under the Convention Against Torture ("CAT"), and, most importantly, an adjustment of status as the spouse of a United States citizen.

---

[1] "On March 1, 2003, the Immigration and Naturalization Service ["INS"] ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the Department of Homeland Security." United States v. Sandoval, 390 F.3d 1294, 1296 n.2 (10th Cir. 2004) (citing Homeland Security Act, Pub. L. [No.] 107-296 Sec. 471, 116 Stat. 2135 (Nov. 25, 2002), 6 U.S.C. § 291). Ferry's appeals cover the time period before and after the transfer of functions between the INS and the DHS. For simplicity, this opinion refers to the immigration agency as the DHS.

[2] The DHS's "immigration enforcement functions fall within the Directorate of Border and Transportation Security, while [the DHS's] immigration services fall within the Bureau of Citizenship and Immigration Services." Patel v. Ashcroft, 375 F.3d 693, 695 n.1 (8th Cir. 2004).

Specifically, Ferry petitions for review of the DHS district director's order of removal under the VWP, Case No. 03-9526, and petitions for review of the Board of Immigration Appeals' ("BIA") order which affirmed an Immigration Judge's ("IJ") denial of asylum and relief under CAT, as well as the IJ's refusal to consider Ferry's application for adjustment of status on jurisdictional grounds, Case No. 04-9555.[3] Ferry also appeals from the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2241, Case No. 05-1014.[4] For the reasons set forth below, we deny the petitions for review. As to the district court's denial of habeas relief, we vacate the portion of the district court's decision pertaining to Ferry's challenges to his administrative order of removal, convert that portion of Ferry's habeas petition into a petition for review, and deny the petition. As to the portion of the district court's decision pertaining to Ferry's challenges to his detention, we affirm the district court's dismissal because Ferry's claims are moot.

---

[3] On February 4, 2005, Alberto R. Gonzales became the United States Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Alberto R. Gonzales is substituted for John Ashcroft as the respondent in Case Nos. 03-9526, 04-9555, and 05-1014.

[4] On April 4, 2003, Ferry filed a petition for writ of mandamus requesting this court to compel the DHS to adjudicate his adjustment of status application. Case No. 03-9542. He also filed a motion for declaratory and injunctive relief, and an emergency motion for immediate release. On April 25, 2003, we denied Ferry's writ of mandamus, motion for immediate declaratory and injunctive relief, and emergency motion for immediate release. Although the parties have continued to include Case No. 03-9542 in their case captions, the case is closed.

## I. BACKGROUND

Ferry is a native of Northern Ireland and a citizen of both the United Kingdom and the Republic of Ireland. In 1992, Ferry joined the Irish Republican Army ("IRA"). In March 1993, Ferry and two other IRA members drove to Dublin, Ireland allegedly to participate in an IRA training camp. During the trip, members of the Royal Ulster Constabulary ("RUC"), the police force in Northern Ireland from 1922 to 2001, stopped the vehicle and recovered two assault rifles and several rounds of ammunition.

Ferry was charged with conspiracy to commit murder, possession of weapons with intent to endanger life or property, and possession of weapons. He was tried at the Crown Court in Belfast, Northern Ireland, a non-jury court system, and found guilty of the first two charges. The Crown Court imposed concurrent sentences of twenty-two years on the conspiracy charge, and sixteen years on the possession of weapons with intent to endanger life or property charge, to be served at Long Kesh prison outside of Belfast. On July 18, 2000, after seven years' imprisonment, Ferry was released pursuant to the Good Friday Agreement, signed on April 10, 1998, which called for the release of IRA prisoners. On August 5, 2000, Ferry married Heaven Sheehan, a United States Citizen, at the Belfast City Hall. Shortly thereafter, Ferry claimed that the RUC

-5-

informed him that his name was on the death list of loyalist paramilitary groups in Northern Ireland.

On December 12, 2000, Ferry entered the United States under the VWP, obtaining authorization to remain in the country until March 11, 2001. In exchange for expedited entry under the VWP, Ferry executed a Nonimmigrant Visa Waiver Arrival/Departure Form ("Form I-94W"). Admin. R. at 826-27. On the Form I-94W, Ferry waived his right "to contest, other than on the basis of an application for asylum, any action in deportation." See 8 U.S.C. § 1187(b)(2). Ferry also marked "no" in response to the question of whether he had "ever been arrested or convicted for an offense or crime involving moral turpitude . . . or been arrested or convicted for two or more offenses for which the aggregate sentence to confinement was five years or more . . . . " See id. § 1187(a)(6) (requiring an alien admitted under the VWP "not to represent a threat to the welfare, health, safety, or security of the United States").

On March 5, 2002, almost a year after his VWP visa expired, Ferry filed a Form I-485 application to adjust status and a Form I-765 request for employment authorization with the DHS district office in Denver, Colorado. That same day, Ferry's wife filed a Form I-130 immediate relative visa petition. The DHS granted Ferry a work permit, but the adjustment of status application and the immediate relative petition remained pending.

-6-

On January 30, 2003, the DHS scheduled an interview with Ferry and his wife in Denver, Colorado, regarding his adjustment of status application and her immediate relative petition. When Ferry and his wife arrived for the interview, DHS officials arrested Ferry.[5] On January 31, the DHS district director issued an administrative order of removal, concluding that Ferry had overstayed under the terms of his VWP visa.[6] Admin. R. at 2503. The order informed Ferry that because he was admitted under the VWP, he could only contest the order of removal by applying for asylum. Id. On February 4, after Ferry expressed interest in applying for asylum, the DHS referred him to an immigration judge for asylum-only proceedings.[7]

On February 19, 2003, the DHS approved Ferry's wife's Form I-130 immediate relative visa petition. Admin. R. at 2703. However, on May 23, 2003, the DHS district director denied Ferry's Form I-485 adjustment of status

---

[5]    Ferry was immediately transferred to the Federal Corrections Institution in Englewood, Colorado. He remained in custody there until February 26, 2003, when he was transferred to the maximum security division of the Denver County Jail. Then on September 17, 2003, Ferry was moved to the Jefferson County Jail.

[6]    The responsibility for an administrative order of removal under the VWP is given to the "district director who has jurisdiction over the place where the alien is found." 8 C.F.R. § 217.4(b)(1). The regulation further states that such removal "shall be effected without referral of the alien to an immigration judge for a determination of deportability, except . . . [for] an alien . . . who applies for asylum in the United States . . . ." Id.

[7]    Ferry did not actually file his asylum application until April 4, 2003. Admin. R. at 2698.

application. Id. at 822-25. The director reasoned that although Ferry was the beneficiary of an approved Form I-130 petition filed by his spouse, the record demonstrated that Ferry was inadmissible on two grounds.[8] First, the director stated that Ferry remained convicted of conspiracy to commit murder and of possession of firearms with intent to endanger life. The director determined that these crimes involved moral turpitude and were not purely political offenses. As a result, the director concluded that Ferry was inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I).[9] Second, the director stated that Ferry was inadmissible because when he entered the United States under the VWP, he failed to disclose his criminal record on his Form I-94W. The director concluded that this failure amounted to a willful misrepresentation of a material fact pursuant to 8 U.S.C. § 1182(a)(6)(C)(i).[10] Lastly, the director ruled that notwithstanding these two

_____

[8] The applicable regulations provide that an applicant for adjustment of status "shall be notified of the decision of the director, and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i).

[9] That section provides that, except as otherwise provided, an alien who is convicted of "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime" is ineligible to receive visas and ineligible to be admitted to the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(I). Further, the regulations provide that no waiver of inadmissibility shall be granted "in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act involving torture." Id. § 1182(h)(2).

[10] That section provides that an "alien, who by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has

(continued...)

grounds, Ferry's application was denied based on an exercise of discretion. The director stated that Ferry's wife and new child were the only factors weighing in favor of his application, and that those factors were significantly outweighed by Ferry's prior criminal record and his misrepresentation about that record at the time he entered the United States. The director informed Ferry that no appeal was available from the decision.[11]

Notwithstanding the DHS's denial of Ferry's application for adjustment of status, Ferry continued to assert his right to adjust his status, and thereby obtain relief from the DHS's administrative order of removal and release from DHS custody. Relevant to these consolidated appeals, Ferry was referred to the immigration court for asylum-only proceedings, Case No. 04-9555; Ferry filed a petition for habeas corpus in federal district court, Case No. 05-1014; and Ferry filed a petition for review in this court of the DHS district director's

---

[10](...continued)
procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i).

[11]     Although Ferry argues otherwise, he has not filed a judicial action seeking review of the DHS's denial of his application for adjustment of status. At most, he filed challenges to the DHS's refusal to adjudicate and render a decision upon his adjustment of status application. Thus, we have no opportunity to consider, as a threshold matter, whether jurisdiction exists to review Ferry's argument that the DHS's denial of his application for adjustment of status was arbitrary and capricious. See 8 C.F.R. § 1245.2(a)(5)(ii) (providing that "[n]o appeal lies from the denial of an application [for adjustment of status] by the director," but that the applicant may renew the application in removal proceedings).

administrative order of removal, Case No. 03-9526.

## A. Case No. 04-9555

On November 4, 2003, an IJ denied Ferry's applications for asylum, withholding of removal, and relief under CAT. Admin. R. at 187-200. At the outset, the IJ observed that Ferry was referred to the Immigration Court in February 2003 for asylum-only proceedings, and that asylum-only hearings were not removal proceedings under 8 U.S.C. § 1229a. Id.[12] Further, the IJ explained that under 8 C.F.R. § 1208.2(c)(1)(iv),[13] an alien such as Ferry who was admitted to the United States pursuant to the VWP and has remained longer than authorized is not entitled to removal proceedings under 8 U.S.C. § 1229a. Id. As a result, the IJ concluded that he did not have authority to review Ferry's application for adjustment of status:

> Respondent has . . . applied for adjustment of status under section 245 [8 U.S.C. § 1255] of the Immigration and Nationality Act. The record shows this application was denied by the Department on May 21, 2003. Although immigration judges may consider such applications, it is only in the context of removal proceedings under section 240 of the Act [8 U.S.C. § 1229a]. Respondent is not in removal proceedings. Accordingly, I do not have the authority to review this application. . . . There is no provision which allows for

---

[12]    Section 1229a, entitled "Removal proceedings," sets forth the procedures an immigration judge must follow in adjudicating an alien's removability.

[13]    That regulation classifies an alien who was admitted under the VWP and has remained longer than authorized as an alien "not entitled to [removal] proceedings under section 240 of the Act [8 U.S.C. § 1229a]." 8 C.F.R. § 1208.2(c)(1)(iv).

-10-

consideration of an application for adjustment of status in asylum-only proceedings.

Id. at A10.

Next, the IJ concluded that Ferry was statutorily barred from asylum and withholding of removal because of his prior conviction for a particularly serious crime in Northern Ireland and his prior engagement in terrorist activity through his membership in the IRA. Id. at A21-22. Additionally, the IJ concluded that Ferry's asylum application was barred because it was untimely, and Ferry had failed to demonstrate any changed or extraordinary circumstances justifying the delay. Id. The IJ stated that Ferry's proffered excuse for his delay–that he relied on his pending application for adjustment of status–was not recognized by law. Id.

Lastly, the IJ denied Ferry relief under CAT. The IJ found that Ferry was treated humanely at Long Kesh and cited Ferry's admission that Long Kesh provided more privileges and better conditions than the Denver County Jail. The IJ also determined that Ferry could avoid any problems he might face in Northern Ireland by relocating to another country, citing Ferry's citizenship to both the Republic of Ireland and the United Kingdom. Id. Ferry appealed the IJ's decision to the BIA.

On May 6, 2004, the BIA affirmed the IJ's decision.  Id. at 2-5.  First, the BIA agreed that the IJ lacked jurisdiction over Ferry's application for adjustment of status:

> The regulation at 8 C.F.R. § 1208.2(c)(3)(i) specifically provides that in asylum only proceedings, the Immigration Judge may only consider whether the alien is eligible for asylum, withholding or deferral of removal, and whether the alien merits asylum in the exercise of discretion.  The regulation further prohibits parties to asylum only proceedings from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any form of relief.

App. at A34.

Second, the BIA affirmed the IJ's denial of Ferry's application for asylum and withholding of removal.  The BIA agreed that Ferry untimely submitted his asylum application.  In particular, the BIA ruled that Ferry's allegations of wrongdoing concerning the DHS's adjudication and denial of his adjustment of status application failed to establish changed or exceptional circumstances to excuse his delay in filing for asylum.  The BIA also concluded that Ferry was statutorily ineligible for withholding of removal because of his prior conviction for a serious crime.

Finally, the BIA determined that Ferry was not entitled to relief under CAT.  The BIA reasoned that Ferry had failed to establish that the harm that he feared–torture or death resulting from his placement on a death list–would be

instigated by or with the consent or acquiescence of the United Kingdom. Id. at 35-36. The BIA explained that the United Kingdom's conduct had demonstrated its efforts to protect individuals placed on death lists. Id. at 36.

B. Case No. 05-1014

On April 7, 2003, Ferry filed a petition for a writ of habeas corpus in the United States District Court for the District of Colorado, challenging the DHS's issuance of an administrative order of removal and his continued detention by federal immigration authorities. App. at A46-A60. He also filed a writ of mandamus and a motion for an emergency temporary restraining order. That same day, the district court denied Ferry's motion for an emergency temporary restraining order.

On November 8, 2004, the district court denied Ferry's petition for a writ of habeas corpus and petition for a writ of mandamus. First, the district court ruled on Ferry's argument that his statutory rights were denied because immigration officials had failed to adjudicate his adjustment of status application. The district court ruled that this claim was moot because the DHS denied his application for adjustment of status on May 21, 2003. The district court also concluded that Ferry's request for adjustment of status did not preclude his removal under the VWP. Next, the district court addressed Ferry's claims that

-13-

immigration officials violated his due process rights by failing to adjudicate his adjustment of status application and by denying him a right to release on bond or to have a bond hearing. The district court concluded that because Ferry was admitted under the VWP, he had waived any constitutional challenge to his detention and removal. The district court also stated that because Ferry waived his rights under the VWP, he had no right to be released on bond or to have a bond hearing.

### C. Case No. 03-9526

On March 3, 2003, Ferry filed a petition for review of the DHS district director's January 31, 2003, administrative order of removal. Admin. R. at 2463-85. In addition to challenging the DHS district director's removal order, Ferry raised arguments contesting the DHS's refusal to adjudicate his adjustment of status application, the IJ's refusal to consider his application for adjustment of status based on jurisdictional grounds, and the IJ's refusal to consider his request to be released without bond.

## II. DISCUSSION

### A. Case No. 04-9555: Appeal of BIA's May 6, 2004 Decision

Ferry petitions for review of the BIA's determination that the IJ lacked jurisdiction to consider his adjustment of status application, and the BIA's affirmance of the IJ's denial of his application for asylum and for relief under

-14-

CAT.[14]  We have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. §

1252(a)(1).  See Kanacevic v. INS, 448 F.3d 129, 133-34 (2d Cir. 2006) (holding

that jurisdiction existed under 8 U.S.C. § 1252(a)(1) to review the BIA's denial of

asylum for a VWP alien in asylum-only proceedings); Nreka v. United States

Attorney Gen., 408 F.3d 1361, 1366-68 & n.8 (11th Cir. 2005) (holding that

jurisdiction existed under 8 U.S.C. § 1252(a)(1) to review the BIA's denial of

asylum, withholding of removal, and relief under CAT for a VWP alien in

asylum-only proceedings); Itaeva v. INS, 314 F.3d 1238, 1241 (10th Cir. 2003)

(concluding that jurisdiction existed under the Illegal Immigration Reform and

Immigrant Responsibility Act's transitional rules, 8 U.S.C. § 1105a, to review the

portion of the BIA's final order which held that the petitioner, a VWP alien, could

not apply for suspension of deportation).

1. IJ's Jurisdiction to Consider Ferry's Adjustment of Status Application

Ferry challenges the BIA's conclusion that the IJ lacked jurisdiction to

consider his adjustment of status application.  Specifically, Ferry argues that he

was denied his statutory right, as a VWP alien with an approved Form I-130

immediate relative petition, to renew or otherwise seek review of his application

for adjustment of status.  He also contends that due process of law entitled him to

a removal hearing in order to obtain review of his application for adjustment of

---

[14]    We do not address the denial of Ferry's application for withholding of
removal because Ferry has not raised the claim on appeal.

status.

We review the BIA's legal determinations de novo. Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir. 2004). We also review constitutional challenges to an immigration statute de novo. Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1152 (10th Cir. 1999).

The VWP's expedited procedure for entry into the United States furthers Congress' purposes of "promoting better relations with friendly nations, eliminating unnecessary barriers to travel, stimulating the travel industry, and alleviating vast amounts of paperwork . . . ." Handa v. Clark, 401 F.3d 1129, 1135 (9th Cir. 2005) (citation omitted). But to prevent an alien from abusing the VWP, Congress required a VWP applicant to sign a waiver of rights to "assure[] that . . . [the alien] will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays." Id. That waiver of rights, which Ferry signed, waives "any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien." 8 U.S.C. § 1187(b)(2). Here, Ferry argues that he does not seek to "contest" the DHS district director's removal order. Instead, Ferry maintains that he wants to "cure" the order of removal through his statutory right to an adjustment of status. Ferry's argument is merely semantic, and is without support under the applicable statutes and regulations, or the law of this circuit.

-16-

The Attorney General may adjust an alien's status:

in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). A VWP alien who is an immediate relative of a United States citizen is expressly eligible to apply for an adjustment of status under § 1255(a). See 8 U.S.C. § 1255(c)(4); 8 C.F.R. § 245.1(b)(8). Ferry suggests that Congress, through 8 U.S.C. § 1255(c)(4), provided certain VWP aliens a remedy to removal falling outside of § 1187(b)(2)'s waiver provision. Our recent decision in Schmitt v. Maurer, 451 F.3d 1092, 1096-97 (10th Cir. 2006), however, squarely rejected the same argument Ferry makes now, i.e., that the statutory provision allowing a VWP alien to apply for adjustment of status trumps the VWP's waiver provision under 8 U.S.C. § 1187(b)(2).

The petitioner in Schmitt filed an adjustment of status application after he was ordered removed for staying in the United States beyond his authorized time under the VWP. Id. at 1093-94. We recognized that although a VWP alien may be eligible to apply for adjustment of status, the applicable regulations clarified that "an alien's ability to apply for adjustment of status does not entitle the alien to administrative proceedings which would not otherwise [have] been provided." Id. at 1096 (citing 8 C.F.R. § 1245.2(a)(5)(ii)). We also observed that any

-17-

conflict between the statutory provision permitting a VWP alien to apply for adjustment of status and the VWP's waiver provision was created by the petitioner's decision to file an application for adjustment of status after he had already overstayed his visa and had been ordered removed. Id. at 1097. Accordingly, we reaffirmed that an alien admitted under the VWP "cannot apply for any form of relief from deportation, including adjustment of status, other than through an application for asylum." Id. at 1096; see Itaeva, 314 F.3d at 1242 (holding that the VWP alien's request for suspension of deportation was barred under 8 U.S.C. § 1187(b)(2)).

Like the petitioner in Schmitt, Ferry failed to apply for adjustment of status during his authorized time in the United States. But in contrast to the petitioner in Schmitt, Ferry filed his application for adjustment of status before the DHS issued a removal order and referred him to asylum-only proceedings. Nevertheless, we conclude that Ferry's attempt to refile his adjustment of status application before the immigration judge, or to otherwise obtain review of the DHS district director's denial of his adjustment application, fares no better than the petitioner's adjustment of status application in Schmitt.[15]

---

[15]    We observe that the Ninth Circuit recently held that "once a VWP entrant [properly] files an adjustment of status application as an immediate relative, as contemplated by 8 U.S.C. § 1255(c)(4), the alien is entitled to the procedural guarantees of the adjustment of status regime . . . , and is no longer subject to the Visa Waiver Program's no-contest clause." Freeman v. Gonzales, 444 F.3d 1031,

(continued...)

-18-

To be sure, 8 C.F.R. § 1245.2(a)(5)(ii) provides that an alien may not appeal from the DHS district director's denial of an application for adjustment of status. The regulation states that the alien instead "retains the right to renew his or her application in [removal] proceedings under 8 CFR part 240." Id. Ferry's apparent right to renew his application for adjustment of status in removal proceedings, however, is eliminated by the last sentence in 8 C.F.R. § 1245.2(a)(5)(ii): "Nothing in this section shall entitle an alien to [removal] proceedings under section 240 of the Act [8 U.S.C. § 1229a] who is not otherwise so entitled." Id. Indeed, the regulations classify an alien who was admitted to the VWP and has overstayed his visa as an "alien[] not entitled to [removal] proceedings under section 240 of the Act [8 U.S.C. 1229a]." 8 C.F.R. § 1208.2(c)(1)(iv); see also 8 U.S.C. § 1229a(a)(3) ("*Unless otherwise specified in this Act*, a [removal] proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be . . . removed from

---

[15](...continued)
1033-34 (9th Cir. 2006). We believe that Freeman is distinguishable on its facts from our present case. Unlike Ferry and the petitioner in Schmitt, Mrs. Freeman filed her application for adjustment of status *before* her ninety-day VWP visa expired. Id. at 1032-33 (emphasis added). As we stated in Schmitt, "[d]uring the first 90 days during which an alien is lawfully present in the United States under the Visa Waiver Program, the alien may apply for adjustment of status without any conflict arising between the two statutes [governing adjustment of status and the VWP waiver provision]. 451 F.3d at 1097. If we misinterpret Freeman and the decision is not limited to adjustment of status applications filed before the expiration of the alien's VWP visa, then we respectfully disagree with the Ninth Circuit's conclusion.

-19-

the United States.") (emphasis added); <u>Handa</u>, 401 F.3d at 1134 (stating that "§ 1187(b) does appear to otherwise specify").  Further, the regulations state that the scope of review in proceedings conducted under 8 C.F.R. § 1208.2(c)(1) "shall be limited to a determination of whether the alien is eligible for asylum or withholding or deferral of removal, and whether asylum shall be granted in the exercise of discretion." 8 C.F.R. § 1208.2(c)(3)(i); <u>see also</u> 8 C.F.R. § 217.4(b)(1) (providing that the removal of an alien admitted under the VWP "shall be effected without referral of the alien to an immigration judge for a determination of deportability, except . . . [for] an alien who applies for asylum in the United States").

It is evident under the applicable statutes and regulations that a VWP alien who overstays his authorized time and is ordered removed has waived his right to contest that removal through an application for adjustment of status.  <u>See Schmitt</u>, 451 F.3d at 1096-97.  Further, we hold that an alien who overstays his authorized time under the VWP and files for an adjustment of status after he has overstayed, but before the issuance of a removal order, has waived his right to contest a subsequent removal order through a renewed application for adjustment of status, or to otherwise seek review of the previously filed adjustment of status. To conclude otherwise would frustrate Congress' intent in establishing the VWP, and would be contrary to the statutes and regulations governing an alien's right to an adjustment of status.  <u>Id.</u> at 1097.  Accordingly, the BIA properly

concluded that the IJ was without jurisdiction to consider Ferry's eligibility for adjustment of status after he was ordered removed and referred to asylum-only proceedings.

Similarly, we reject Ferry's claim that due process of law entitled him to a hearing before an immigration judge for consideration of his adjustment of status application.[16] The Fifth Amendment's guarantee of due process of law is applicable to aliens in removal proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993) (citation omitted); see Aguilera v. Kirkpatrick, 241 F.3d 1286, 1292 (10th Cir. 2001) (stating that "[w]hen facing deportation . . . aliens are entitled to procedural due process, which provides an opportunity to be heard at a meaningful time and in a meaningful manner") (internal quotations and citations omitted). Even so, an alien's due process rights are subject to waiver. See Nose v. Attorney Gen., 993 F.2d 75, 78-79 (5th Cir. 1993) (concluding that the plaintiff, an alien visitor under the VWP, knowingly and voluntarily waived her right to a hearing before an immigration judge). On appeal, Ferry does not

---

[16]    To the extent Ferry also mounts an equal protection challenge to the VWP, we conclude that such a claim does not survive a rational basis analysis. See McGuire v. U.S. Immigration and Naturalization Serv., Dist. Director, 804 F. Supp. 1229, 1234 (N.D. Cal. 1992) (concluding that Congress' goal to reduce the administrative burdens associated with the visa requirement, along with the potential for abuse of the VWP program, provided a rational basis for requiring an alien to waive his rights to contest removal based on a violation of the terms of his stay).

dispute that his VWP waiver was knowing and voluntary. Additionally, we observe that the Seventh Circuit has rejected a similar due process challenge to the VWP. In Wigglesworth v. INS, the Seventh Circuit concluded, in relevant part, that the alien's due process rights were not violated based on "the fact that she was not afforded the opportunity to present, or receive a determination concerning, her application for discretionary relief." 319 F.3d 951, 959-60 (7th Cir. 2003). The Seventh Circuit stated that the VWP alien "not only waived her right to a deportation hearing, she also waived any rights that she had to apply for non-asylum forms of relief from deportation." Id. at 960 (citations omitted).

We therefore conclude that Ferry has not shown the prejudice necessary to establish a due process violation. Wigglesworth, 319 F.3d at 960; Michelson v. INS, 897 F.2d 465, 468 (10th Cir. 1990). By signing the VWP waiver, Ferry received all of the due process to which he was entitled. Ferry was referred for a hearing before an immigration judge on his applications for asylum, withholding of removal, and for relief under CAT. He relinquished his rights to all other forms of relief.

## 2. Asylum

Ferry's opening brief does not challenge the BIA's denial of his asylum application. See Aplt. Br. at 19 ("Petitioner Ciaran Ferry does not seek herein to reassert his asylum claim, but rather confines his argument on appeal to his due

process claims flowing from his right to adjustment of status as a spouse of a United States Citizen."). Ferry's reply brief, however, argues that the Real ID Act[17] grants us jurisdiction to review the BIA's determination that he failed to demonstrate changed or extraordinary circumstances to excuse the untimely filing of his asylum application. Aplt. Reply Br. at 24. Specifically, Ferry contends that his failure to file his application for asylum within one year of his arrival in the United States was excusable because he reasonably relied on his pending application for adjustment of status. Ordinarily, we do not review arguments raised for the first time in a reply brief. Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000) (citation omitted). But we will address Ferry's argument because he filed his opening brief several months before Congress' passage of the Real ID Act.

An alien must establish "by clear and convincing evidence that the [asylum] application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Notwithstanding this one year time limit, an alien's asylum application "may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing . . . ." §

_____

[17]   Real ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 302, codified on May 11, 2005.

-23-

1158(a)(2)(D).  The statute further provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [8 U.S.C. § 1158(a)(2)]."  § 1158(a)(3).  Before the enactment of the Real ID Act, we interpreted § 1158(a)(3) to deprive us of jurisdiction to review the timeliness of an application for asylum, or to review a determination as to whether changed or extraordinary circumstances exist to excuse an untimely filing.  Tsevegmid v. Ashcroft, 318 F.3d 1226, 1229-30 (10th Cir. 2003).

With Congress' passage of the Real ID Act, we now have jurisdiction to review constitutional claims and questions of law, 18 U.S.C. § 1252(a)(2)(D), but "challenges directed solely at the agency's discretionary and factual determinations remain outside the scope of judicial review."  Diallo v. Gonzales, 447 F.3d 1274, 1281 (10th Cir. 2006) (citing Chen v. U.S. Dep't of Justice, 434 F.3d 144, 154 (2d Cir. 2006)).  Ferry's argument that his pending adjustment of status application qualified as either a changed or extraordinary circumstance to excuse his untimely asylum application is a challenge to an exercise of discretion that remains outside our scope of review.  See Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3rd Cir. 2006) (holding that "despite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing"); Ignatova v. Gonzales, 430 F.3d 1209, 1214 (8th Cir. 2005) (same); Ramadan v. Gonzales,

427 F.3d 1218, 1222 (9th Cir. 2005) (same); Chacon-Botero v. United States

Attorney Gen., 427 F.3d 954, 957 (11th Cir. 2005) (same); Vasile v. Gonzales,

417 F.3d 766, 768-69 (7th Cir. 2005) (same). Accordingly, we conclude that we

lack jurisdiction to consider the BIA's denial of Ferry's untimely application for

asylum.

### 3. Convention Against Torture

Ferry seeks review of the BIA's conclusion that he did not qualify for

relief under CAT. We review the BIA's factual findings under the substantial

evidence standard. Rivera-Jimenez v. INS, 214 F.3d 1213, 1216 (10th Cir.

2000). The BIA's findings of fact are conclusive unless the record demonstrates

that "any reasonable adjudicator would be compelled to conclude to the

contrary." 8 U.S.C. § 1252(b)(4)(B). Our role is not to re-weigh the evidence or

to evaluate the credibility of witnesses. Refahiyat v. INS, 29 F.3d 553, 556 (10th

Cir. 1994).

In order for Ferry to prevail under CAT, he must establish that it is more

likely than not that he would be tortured if he returned to the United Kingdom.

Sviridov v. Ashcroft, 358 F.3d 722, 729 (10th Cir. 2004); see 8 C.F.R. §

1208.16(c)(2). Under CAT, "torture" is defined as:

> [A]ny act by which severe pain or suffering, whether physical or
> mental, is intentionally inflicted on a person for such purposes as
> obtaining from him or her or a third person information or a
> confession, punishing him or her for an act he or she or a third

-25-

person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, *when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity*.

8 C.F.R. § 1208.18(a)(1) (emphasis added); see also 8 C.F.R. § 1208.18(a)(7) ("Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."); Cruz-Funez v. Gonzales, 406 F.3d 1187, 1192 (10th Cir. 2005) (explaining that actual knowledge or willful acceptance is not required to prove a government official's "acquiescence" to torture, and that willful blindness is sufficient).

The BIA concluded that Ferry failed to establish that torture would be instigated by, or with the consent or acquiescence of, the United Kingdom's government. Specifically, the BIA stated that the conduct of the United Kingdom indicated that the government had attempted to protect individuals included on the death lists of Northern Irish loyalist paramilitary groups. In support, the BIA cited Ferry's own testimony that the United Kingdom informed Ferry and his father of Ferry's inclusion on a death list, and that the United Kingdom had provided Ferry a security grant, the proceeds of which Ferry and his father used to reinforce the front door of their home. Based on the administrative record, we agree with the BIA's determination that Ferry failed to show the requisite

government acquiescence to support a likelihood of torture if he returned to the United Kingdom. Ferry's testimony provides direct evidence of the United Kingdom's efforts to provide him information and financial assistance to prevent torture. Ferry's citation to the record to show collusion between the United Kingdom and loyalist paramilitary groups is cursory at best.

B.  Case No. 05-1014: Appeal of District Court's Denial of Habeas Relief

Ferry appeals the district court's decision denying his petition for a writ of habeas corpus under 28 U.S.C. § 2241. In particular, Ferry challenges the DHS's issuance of a removal order without a hearing on his adjustment of status application, and his detention by the DHS without bond or a bond hearing.

At the outset, we must address the impact of the Real ID Act on Ferry's appeal of the district court's denial of his habeas corpus petition. Under the Real ID Act, petitions for review filed with the court of appeals are "the sole and exclusive means" of review of most administrative orders of removal, deportation, or exclusion. 8 U.S.C. § 1252(a)(5). Thus, the Real ID Act eliminates a district court's jurisdiction over habeas petitions challenging final orders of removal. However, the Real ID Act did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention. See, e.g., Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005). Here, Ferry filed a mixed habeas petition, challenging the DHS's administrative order of removal under the

-27-

VWP, as well as the DHS's continued detention without bond or without providing a bond hearing.

The district court lacked jurisdiction to consider Ferry's petition insofar as it challenged the DHS's administrative order of removal. As a result, we must vacate the portion of the district court's decision pertaining to Ferry's challenges to the DHS's administrative order of removal and convert that part of Ferry's habeas petition into a petition for review. See Schmitt, 451 F.3d at 1094-95 (holding that habeas petitions that were pending before a court of appeals before the effective date of the Real ID Act, such as Ferry's, must be converted into petitions for review and retained by the court of appeals under 8 U.S.C. § 1252(a)) (citing Bonhometre, 414 F.3d at 446). On the other hand, the district court properly exercised jurisdiction over Ferry's challenges to his detention. We exercise jurisdiction over that portion of the district court's decision pursuant to 28 U.S.C. § 1291, and review Ferry's claims de novo. Broomes v. Ashcroft, 358 F.3d 1251, 1255 (10th Cir. 2004) (citation omitted) (reviewing the district court's dismissal of a § 2241 habeas petition de novo).

Ferry's challenges to the DHS district director's administrative order of removal are without merit. As with Ferry's petition for review of the BIA's decision, Ferry generally contends that the DHS's district director's administrative order of removal was improper in light of his due process and

statutory rights to an adjudication of his application for adjustment of status. We reject these arguments for the reasons stated in Part II.A.1. of this opinion.

Next, Ferry argues that the DHS violated his due process rights when, after his arrest on January 30, 2003, it denied him an individualized hearing so that he could challenge the legality of his detention and obtain a release from custody on bond. Ferry's challenge to the legality of his detention without an opportunity for bond or a bond hearing is moot. Ferry's administrative removal order has been executed, and thus, Ferry is no longer in the custody of the DHS to benefit from a bond determination or release. See, e.g., Soliman v. United States, 296 F.3d 1237, 1243 (11th Cir. 2002); Ortez v. Chandler, 845 F.2d 573, 575 (5th Cir. 1988). Ferry asserts that we cannot dismiss his petition as moot because secondary or collateral consequences survive his deportation. Riley v. INS, 310 F.3d 1253, 1257 (10th Cir. 2002). First, Ferry states that he will no longer be able to return to his family in the United States. But Ferry's inability to return to the United States is a continuing injury that stems from his removal order, not his detention. So v. Reno, 251 F. Supp. 2d 1112, 1124 (E.D.N.Y. 2003). Ferry also claims that, as a result of his detention without bond, he lost two years of his liberty and the consortium of his family. We note, however, that at oral argument Ferry's counsel confirmed that Ferry does not seek monetary damages for loss of liberty or consortium. Rather, his counsel agreed that, in essence, Ferry seeks a declaratory judgment that he was entitled to a bond hearing. It is well established

-29-

that "'[t]he judicial inhibition against deciding moot questions is . . . not limited to the field of declaratory judgments.'" Miller v. Udall, 368 F.2d 548, 548 (10th Cir. 1966) (citation omitted). We decline to issue an advisory opinion regarding Ferry's entitlement to a bond hearing because a declaratory judgment on that question would have no meaningful effect on the DHS's future conduct towards Ferry. Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1266 (10th Cir. 2004).

C.  Case No. 03-9526: Petition for Review of DHS's Removal Order

On March 3, 2003, Ferry filed a petition for review of the DHS district director's January 31, 2003, administrative order of removal. Admin. R. at 2463-85. We have jurisdiction to review the DHS district director's administrative order of removal pursuant to 8 U.S.C. § 1252(a). See Schmitt, 451 F.3d at 1095 (reviewing challenge to district director's issuance of a removal order under the VWP). Notably, Ferry does not dispute that he overstayed his authorized time under the VWP, or that his waiver was knowing and voluntary. Ferry instead asserts that he was denied the opportunity for review of the district director's decision in an administrative proceeding. This argument is without merit. See Handa, 401 F.3d at 1133 ("We do agree that when Handa signed the waiver, he gave up the possibility of other forms of relief, *as well as the opportunity to challenge the merits of a removal decision arising out of his VWP entry*.")

(emphasis added).  Ferry also argues that the district director improperly ordered him removed from the United States because, prior to the issuance of the removal order, he had exercised his statutory right to file an application for adjustment of status.  For the reasons previously stated in Part II.A.1. of this opinion, we conclude that Ferry was not entitled to contest the DHS's removal order through a renewed application for adjustment of status, or to otherwise obtain review of the DHS's denial of his application.

Ferry's petition for review also challenges the DHS's refusal to adjudicate his adjustment of status application, the IJ's refusal to consider his application for adjustment of status based on jurisdictional grounds, and the IJ's refusal to consider his request to be released without bond.  We quickly dispose of these remaining claims.  Ferry's argument that the DHS refused to render a decision on his adjustment of status application is moot based on the DHS district director's May 21, 2003, denial of Ferry's application for adjustment of status.  Ferry's argument that he was entitled to have the IJ review his adjustment of status application is denied for the reasons stated in Part II.A.1. of this opinion.  Lastly, Ferry's claim that the IJ should have considered his request for a bond determination is moot because, as stated in Part II.B. of this opinion, we are unable to provide Ferry any meaningful relief because he has since been deported.

III. CONCLUSION

Ferry's petitions for review in Case Nos. 03-9526 and 04-9555 are
DENIED. As to Ferry's appeal of the district court's denial of a writ of habeas
corpus, Case No. 05-1014, we VACATE the portion of the district court's
decision pertaining to Ferry's challenge to his administrative order of removal,
convert that portion of Ferry's petition for writ of habeas corpus into a petition
for review, and DENY his petition for review. We AFFIRM the portion of the
district court's decision denying Ferry's challenge to his detention.