FILED
United States Court of Appeals
Tenth Circuit

**March 25, 2008**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

NIXON SIMATUPANG,

Petitioner,

v.

MICHAEL B. MUKASEY,
United States Attorney General,

Respondent.

No. 07-9534
(Petition for Review)

ORDER AND JUDGMENT[*]

Before **LUCERO** and **PORFILIO**, Circuit Judges, **BRORBY**, Senior Circuit Judge.

Nixon Simatupang, a citizen of Indonesia and a Christian, seeks review of a decision of the Board of Immigration Appeals ("BIA"). That decision denied Simatupang's requests for asylum, restriction on removal, and protection under the Convention Against Torture ("CAT"). We **DENY** the petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

During his elementary and middle school years, Simatupang attended private Christian schools in Indonesia. Because a private high school was not available on his home island, however, he enrolled in a government school in which 94 percent of the students were of the Islamic faith. Like other Christian students at that school, Simatupang was treated unfairly, because the "teachers ignored him, and did not allow his participation in activities and competitions." Due to this discrimination, Simatupang chose to attend a private university.

After graduation in 1996, Simatupang sought employment at government businesses and banks, but he was not offered any positions, allegedly because of religious discrimination. He decided to come to the United States to study English and was accepted into a language program in Denver, Colorado. In March 1997, Simatupang entered the United States on a nonimmigrant visa. That same month, an Indonesian court declared his father's business bankrupt and his parents could no longer pay his tuition. Simatupang was unable to attend classes, but after three months, he obtained employment in the United States.

While Simatupang resided in this country, some of his relatives experienced difficulties in Indonesia. His aunt's house was burned during anti-Christian riots that occurred in May 1998. Simatupang's uncle was severely beaten and stabbed by three Muslims in November 2002 because he helped their relative convert to Christianity. The police arrested one of the individuals

responsible for the beating, but the uncle dropped charges after receiving a threatening letter.

On learning of his uncle's beating, Simatupang resolved to apply for asylum, restriction on removal, and CAT relief. On January 29, 2003, he filed his application, claiming past persecution and a well-founded fear of future, country-wide persecution, based upon his Christian religion. Simatupang offered the following evidence in support of his application. He testified that he fears that Muslims will harm him physically and psychologically if he returns to Indonesia and that the police will be unable to protect him. While Simatupang's application was pending, his brother's church in Indonesia was burned. Country-condition exhibits were also submitted, reporting attacks on Christians in various areas of the Indonesian archipelago.

At the hearing, the immigration judge ("IJ") found that Simatupang's asylum application was not filed within the requisite one-year statutory period and that the record did not demonstrate extraordinary or changed circumstances sufficient to excuse the delay. Regarding restriction on removal and relief under the CAT, the IJ determined that Simatupang failed to show that he was persecuted or tortured in the past or that it is more likely than not that he would be persecuted or tortured upon his return to Indonesia. On this basis, the IJ denied asylum, restriction on removal, and relief under the CAT. In a brief written order

issued pursuant to 8 C.F.R. § 1003.1(e)(5), the BIA affirmed the IJ.  In his petition for review, Simatupang argues that relief was wrongfully denied.

## II

## A

An alien may not apply for asylum without demonstrating by clear and convincing evidence that the application has been filed within one year after the date of the alien's arrival in the United States.  8 U.S.C. § 1158(a)(2)(B).  The BIA may accept an otherwise untimely application, however, if it is convinced that the alien demonstrated either (1) "the existence of changed circumstances which materially affect [his] eligibility for asylum" or (2) "extraordinary circumstances relating to the delay in filing an application within the period specified."  § 1158(a)(2)(D).

We have jurisdiction to review a denial of an asylum application due to untimeliness only if the petitioner raises constitutional claims or questions of law. Ferry v. Gonzales, 457 F.3d 1117, 1130 (10th Cir. 2006).  We have no jurisdiction over discretionary decisions or findings of fact.  Id.  There is no dispute that Simatupang failed to meet the one-year time limit.  He argues, however, that we have jurisdiction to review the legal question of whether the IJ and, in turn, the

BIA applied an incorrect definition of the term "changed circumstances." We agree and proceed to review this legal question.[1]

As an initial matter, we must determine whether the form of the BIA's order requires us to consider alleged legal error by the IJ. When the BIA issues a "brief order[] affirming" the IJ's order, as it did here, we review the BIA's written decision rather than the IJ's oral decision. Sarr v. Gonzales, 474 F.3d 783, 789-90 (10th Cir. 2007). In reviewing the BIA's order, any application of an erroneous definition of "changed circumstances" by the IJ is irrelevant unless the BIA adopted the IJ's error. "Where the BIA decision does not explicitly incorporate or summarize the IJ's reasoning and contains a discernible substantive discussion that stands on its own, our review extends no further." Id. at 790 (internal quotations omitted).

In its decision, the BIA did not adopt the IJ's definition of "changed circumstances." Rather, it reached its own determination that Simatupang's evidence did not "establish[] the existence of changed or extraordinary circumstances which materially affected the ability to file a timely application" (emphasis added). We interpret this statement as an independent conclusion that Simatupang did not meet either basis for acceptance of an untimely application

---

[1] To the extent Simatupang seeks review of the BIA's application of § 1158(a)(2)(D) to the facts of his case, we lack jurisdiction to review such a factual determination.

under 8 U.S.C. § 1158(a)(2)(D).  Moreover, we see no indication that the BIA's understanding of "changed circumstances" was erroneous.  Thus, the BIA did not legally err in dismissing Simatupang's asylum claim as untimely.

**B**

Simatupang also seeks review of the denial of his request for restriction on removal.  On appellate review of a BIA decision, "[o]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.  Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  Id. at 788-89 (quotations omitted).  We do not reweigh the evidence or evaluate witness credibility.  Id. at 789.

"To qualify for restriction on removal, an alien must show a clear probability of persecution in the proposed country of removal," Yan v. Gonzales, 438 F.3d 1249, 1251 (10th Cir. 2006) (quotation omitted), on grounds of "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42).  A probability of future persecution is presumed if the alien "is determined to have suffered past persecution in the proposed country of removal."  8 C.F.R. § 208.16(b)(1)(i).  Otherwise, the alien must show that "it is more likely than not" that he would be persecuted upon removal, § 208.16(b)(1)(iii), and must also demonstrate that future persecution could not reasonably be avoided by moving elsewhere within the county of removal,

-6-

§ 208.16(b)(2), (3)(i). This court has defined persecution as "the infliction of suffering or harm upon those who differ . . . entail[ing] more than just restrictions or threats to life or liberty." Sidabutar v. Gonzales, 503 F.3d 1116, 1124 (10th Cir. 2007) (quotation omitted).

Simatupang claims that the BIA denied restriction on removal based on inappropriate credibility determinations and improper evidentiary evaluations. Assuredly, the record may demonstrate that Simatupang experienced discrimination and difficult times in Indonesia, but it does not compel a reasonable factfinder to conclude that he was subjected to persecution in the past or that it is "more likely than not" that he will be persecuted upon removal. As for past persecution, the BIA found that the employment and educational discrimination Simatupang experienced does not rise to the level of persecution. This finding is supported by his own testimony about his past experiences in Indonesia. As for a clear probability of future persecution, the BIA found that Simatupang had failed to adduce evidence that his fear of persecution was country-wide. This conclusion is supported by the IJ's finding that Indonesia contains some majority-Christian islands where Simatupang presumably would not be subject to religious persecution. We conclude that the BIA's findings underlying the denial of restriction on removal are supported by substantial evidence.

## C

"The Convention Against Torture prohibits the return of an alien to a country where 'it is more likely than not that he or she would be tortured.'" <u>Yan</u>, 438 F.3d at 1251 (quoting 8 C.F.R. § 1208.16(c)(2)). "Torture" must be "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." § 1208.18(a)(2). To warrant relief under the CAT, the treatment must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." § 1208.18(a)(1). Even assuming that he has provided evidence of a likelihood of treatment amounting to torture, Simatupang has not shown that any public official would acquiesce in this treatment. To the contrary, the only evidence in the record suggests that rather than acquiescing, the government investigates any ill treatment. After all, police made an arrest following the beating of Simatupang's uncle and closed the case only at the uncle's request. We are compelled to

conclude that the BIA's denial of CAT relief was supported by substantial evidence.

**III**

The petition for review is **DENIED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge