**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 6, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NIXON SIMATUPANG,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 10-9503
(Board of Immigration Appeals)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Circuit Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

Nixon Simatupang, a Christian and a native and citizen of Indonesia, seeks review of the denial of his petition to reopen an order of removal. The Board of Immigration Appeals (BIA) rejected his claim that new evidence established politically changed circumstances which have increased the danger for practicing Christians in Indonesia.

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

We deny his petition.

# I.

Simatupang entered the United States on a student visa in 1997.  In January 2003, he filed his initial requests for asylum, restriction on removal, and protection under the Convention Against Torture (CAT).[1]  The Immigration Judge (IJ) heard evidence showing "his aunt's house was burned during anti-Christian riots that occurred in May 1998 [and his] uncle was severely beaten and stabbed by three Muslims in November 2002 because he helped their relative convert to Christianity."  *Simatupang v. Mukasey*, 271 Fed. Appx. 710, 712 (10th Cir. 2008) (unpublished).  Although authorities arrested one suspect, "the uncle dropped charges after receiving a threatening letter."  *Id*.  Simatupang also submitted reports of "attacks on Christians in various areas of the Indonesian archipelago."  *Id*.

The IJ denied relief, concluding Simatupang "failed to show that he was persecuted or tortured in the past or that it is more likely than not that he would be persecuted or tortured upon his return to Indonesia."  *Id*.  The BIA affirmed.  Simatupang petitioned this Court for review.  We held:

Assuredly, the record may demonstrate that Simatupang experienced

---

[1] "The Convention Against Torture prohibits the return of an alien to a country where ''it is more likely than not that he or she would be tortured.'''  *Yan v. Gonzales*, 438 F.3d 1249, 1251 (10th Cir. 2006) (quoting 8 C.F.R. § 1208.16(c)(2)). "Torture" must be "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."  8 C.F.R. § 1208.18(a)(2).  To warrant relief under the CAT, the treatment must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  *Id*. at § 1208.18(a)(1).

discrimination and difficult times in Indonesia, but it does not compel a reasonable factfinder to conclude that he was subjected to persecution in the past or that it is "more likely than not" that he will be persecuted upon removal.

*Id.* at 713. We further held "the BIA's denial of CAT relief was supported by substantial evidence" because Simatupang failed to show "any public official would acquiesce in [any treatment amounting to torture]." *Id.* at 714.

Simatupang filed a motion with the BIA to reopen his case on June 29, 2009, due to changed circumstances in Indonesia. His evidence established that his sister was severely beaten in January 2008 by Muslims who opposed her using her house as a place of Christian worship. Although several complaints were filed with the police, there was no official response. She received threats that her house would be burned and her family killed if her "infidel activities" continued. (Certified Administrative Record (CAR) at 24.) Simatupang also submitted nineteen articles and reports from 2006 through 2008 detailing clashes between Muslims and minority religious sects and related political events. The BIA denied the motion concluding the evidence was merely cumulative to the evidence in his original action and did "not meaningfully reflect 'changed country' circumstances in Indonesia." (CAR at 6.)

## II.

"The BIA has broad discretion, conferred by the Attorney General, 'to grant or deny a motion to reopen.'" *Kucana v. Holder*, 130 S. Ct. 827, 838 (2010) (quoting 8 CFR § 1003.2(a)). We "retain jurisdiction to review, with due respect, the Board's decision." *Id.* "The BIA abuses its discretion when its decision provides no rational

explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003) (quotations omitted).

> Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.

*INS v. Doherty*, 502 U.S. 314, 323 (1992) (citation omitted).

Generally, "a party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened . . . ." 8 C.F.R. § 1003.2(c)(2). However, there are exceptions. Relevant here, the limitations do not apply if the motion to reopen involves a request "for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *Id.* at § 1003.2(c)(3)(ii).

Simatupang argues the BIA abused its discretion because, not only did he show his sister's mistreatment and the indifference of the police, he showed "that [since his original application] radical Muslim groups have established themselves as a political force in Indonesia. The Indonesian government has become weaker, and thus unable or unwilling to protect non-Muslims." (Appellant's Br. at 4-5.) Specifically, he points to an

article from the *New York Times* published October 7, 2008, which states: "[Some] analysts who have studied the [Council of Ulemas][2] group say Islamic hard-liners have had an increasingly dominant role in the council in the last few years." (CAR at 57.) Simatupang argues the increased government support of radical Muslims establishes an increased likelihood of violence against Christians. But he fails to acknowledge the same article goes on to state: "Still, most of Indonesia's Muslims remain moderate, and some have begun to fight back." (*Id*. at 58.)

Careful review of Simatupang's evidence reveals the BIA's determination is well-supported in the record. Like the evidence in his first application, Simatupang's "new" evidence illustrates only that the ongoing tensions in his homeland continue -- as do the efforts to improve conditions. Because the BIA's decision is supported by the record, it did not abuse its discretion in denying Simatupang's motion to reopen his removal proceedings.

## III.

"To receive the protections of the CAT, an alien must demonstrate that it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Sidabutar v. Gomez*, 503 F.3d 1116, 1125 (10th Cir. 2007) (quotations omitted). CAT differs from a claim for asylum "because

---

[2] The Council of Ulemas was formed by the Indonesian government in 1975 and represents established Muslim organizations. "In addition to advising the government on religious issues, it distributes [nonbinding] fatwas, or religious directives, advising Muslims on how to practice their faith." (CAR at 56.) Their "influence in restricting religious freedoms increased during [2007-2008] sometimes with government support," especially for those it considers "deviant" Muslim sects. (*Id*. at 39.)

there is no requirement that the petitioners show that torture will occur on account of a statutorily protected ground." *Id*. (quotations omitted). Because Simatupang failed to offer new, rather than cumulative, evidence on this issue as well, he failed to demonstrate he would be tortured by the Indonesian government or a proxy for the government if he returns to Indonesia.

The petition for review is DENIED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge