**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALEJANDRO HERNANDEZ-TORRES,
a/k/a Colin German Hernandez,

     Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

     Respondent.

No. 15-9549
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Alejandro Hernandez-Torres, a native and citizen of Mexico, petitions for

review of an order by the Board of Immigration Appeals (BIA) affirming a decision

by the Immigration Judge (IJ) denying his application for protection under the

Convention Against Torture (CAT). Exercising jurisdiction pursuant to 8 U.S.C.

§ 1252, we deny the petition for review.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.  Background

Mr. Hernandez-Torres entered the United States illegally in April 2000.  After he was arrested for second-degree assault in 2009, the Department of Homeland Security (DHS) commenced removal proceedings against him.  He was subsequently convicted on the assault charge and sentenced to five years in prison.  DHS then moved to pursue administrative removal against Mr. Hernandez-Torres without a hearing pursuant to 8 U.S.C. § 1228(b),(c) because he had been convicted of an aggravated felony.  An IJ granted the motion and found that Mr. Hernandez-Torres was conclusively presumed to be deportable and ineligible for any type of relief due to his aggravated-felony conviction.

Mr. Hernandez-Torres appealed the IJ's order terminating his removal proceedings and finding him removable.  Along with his appeal, he filed an application for asylum, withholding of removal, and CAT protection.  Although the BIA affirmed the IJ's termination of removal proceedings, DHS subsequently moved to reopen the proceedings.  The removal proceedings were reopened and Mr. Hernandez-Torres had a hearing before an IJ where he testified in support of his applications for relief.

Mr. Hernandez-Torres testified that he was a police officer and he began working in the internal affairs department in March 1999.  He was involved with investigating police officers involved in an automobile theft ring.  He explained that 50 police officers were implicated in the theft ring and that most of them were arrested and went to jail.  He testified against the ring leader, Guillermo Escamilla,

2

who was subsequently convicted and sentenced to 20 years in prison. In his affidavit, Mr. Hernandez-Torres stated that he "was lucky because the[] day of Guillermo's sentencing, I was protected with six (6) police officers." R. at 281.

Around the time of the Mr. Escamilla's sentencing, Mr. Hernandez-Torres began to receive death threats at work and at home by other police officers who were upset about the investigation. He reported the threats to his supervisors, but he stated in his affidavit that "nobody could protect me because even their lives were in danger." *Id.* at 282. He testified that he and a co-worker were shot at while they were investigating the theft ring, and after the investigation, he witnessed another co-worker being shot and killed while driving.

After a few months, Mr. Hernandez-Torres requested a transfer because he was scared for his life. His request was granted and he was transferred to work in a police unit in a city about an hour and a half away. He testified, however, that he had problems with his new co-workers because they knew about his work investigating corrupt police officers and one of them—named El Gallo—used to work with Mr. Escamilla's brother. Mr. Hernandez-Torres said El Gallo and another co-worker beat him up. He also testified that on two occasions El Gallo came to his house and shot at him.

In his affidavit, Mr. Hernandez-Torres related an incident where one of his colleagues was killed in a helicopter accident. He was also supposed to be on the helicopter, but he ended up not going. He believes that Mr. Escamilla's brother or his affiliates tampered with the helicopter. A couple of days after the helicopter

3

accident, he stated that he "fled for [his] life." *Id*. at 283. He arrived in the United States on April 15, 2000.

He testified he believes he will be killed if he returns to Mexico because many of the people that were arrested as part of his investigation are now out of prison. He testified that he believes they are now involved in drug trafficking and that the government has no control over them. Although he had been gone from Mexico for thirteen years at the time of the hearing, he testified that he would still be in danger if he returned. He related two incidents from 2005 where people contacted his father-in-law and father, inquiring as to his whereabouts. He also testified that in 2012 his sister told his wife that "some people were around, were coming around the house, like, trying to see or waiting for someone." *Id*. at 214.

The IJ denied all of Mr. Hernandez-Torres's applications for relief. On appeal, the BIA concluded that due to his conviction for an aggravated-felony, Mr. Hernandez-Torres was ineligible for asylum, withholding of removal under the Immigration Act and withholding of removal under the CAT. The BIA noted, however, that he was still eligible for deferral of removal under the CAT. The BIA found that remand was necessary for the IJ to provide further analysis related to Mr. Hernandez-Torres's eligibility for CAT protection.

On remand, the IJ again denied Mr. Hernandez-Torres's application for protection under the CAT. The BIA affirmed the IJ's denial and dismissed Mr. Hernandez-Torres's appeal. Mr. Hernandez-Torres now petitions for review of the BIA's decision.

4

II.  Standard of Review

When a single member of the BIA affirms the IJ's decision in a brief order, *see* 8 C.F.R. § 1003.1(e)(5), the BIA's decision is the final order under review, *see Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  "[W]hen seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds."  *Id*.  "We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard."  *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005).  "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Id*.

III.  Convention Against Torture

 "Article 3 of the Convention Against Torture prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official."  *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (internal quotation marks and brackets omitted).  "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."  8 C.F.R. § 1208.18(a)(7).  We have explained that "willful blindness suffices to prove acquiescence."  *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (internal quotation marks omitted).

5

Aliens, like Mr. Hernandez-Torres, who are ineligible for withholding of removal under the CAT may still be eligible for deferral of removal under the CAT. *See* 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a). "In order to establish eligibility for deferral of removal, [Mr. Hernandez-Torres] must show that it is more likely than not that [he] will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Matter of M-B-A-*, 23 I. & N. Dec. 474, 477 (BIA 2002); *see also* 8 C.F.R. § 1208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under [the CAT] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.").

IV.  Agency Decisions

In the BIA's order affirming the IJ's denial of CAT relief, the BIA held that "the [IJ] correctly determined that [Mr. Hernandez-Torres] did not show that Mexican officials are more likely than not to consent or acquiesce to any acts of harm [he] fears in Mexico." R. at 3. The BIA further held that "the [IJ] correctly concluded that [Mr. Hernandez-Torres] did not show that Mexican officials are more likely than not to breach their duty to intervene and protect [Mr. Hernandez-Torres] from rogue officers[1] or others." *Id*. The BIA's order summarizes the IJ's findings and observations that supported these holdings. That summary follows below.

---

[1] The IJ characterized the low-level government officers who threatened Mr. Hernandez-Torres as "rogue government officials" and contrasted those rogue officials with his "police superiors who did not threaten [him], but were, according to (continued)

6

The IJ noted that Mr. Hernandez-Torres was provided with six officers to protect him on the day Mr. Escamilla was sentenced, and noted also that he was granted the transfer he requested to avoid further threats against his life. The IJ found "that the superior government officials acting in their official capacity did not participate in the threats against [Mr. Hernandez-Torres], made some attempt to protect [him], and actively prosecuted those threatening [him] for the crimes [he] uncovered in his investigation." *Id*. at 3-4. The IJ therefore found "that the superior officials' actions demonstrate that the Mexican police and government did not have a policy or regular practice of acquiescing to these rogue officials" and also concluded "that the inability of the government to protect [Mr. Hernandez-Torres] in the past did not give rise to the level of participation or acquiesce[nce] in torture." *Id*. at 4.

The IJ also observed "that there was no evidence in the record to show that the police officers who had been prosecuted have been reinstated in the Mexican police force or other government position, nor did [Mr. Hernandez-Torres] demonstrate any connection between current government officials and those former officials that the government had successfully prosecuted." *Id*. In addition, the IJ noted that although Mr. Hernandez-Torres "claims that the former officials continue to seek his whereabouts, there was no evidence presented to support [his] contentions." *Id*. Finally, the IJ found that Mr. Hernandez-Torres failed to "show that he could not relocate to a part of Mexico where he is unlikely to be tortured." *Id*.

[his own] testimony, participants in the fight against corruption and were themselves fearful for their own lives." R. at 91.

7

Relying on the reasons stated by the IJ, the BIA found "no clear error in the [IJ's] determination that [Mr. Hernandez-Torres] did not show that he more likely than not will suffer torture by or with the acquiescence (including the concept of willful blindness) of a public official of the Mexican government." *Id*.

V. Discussion

In his petition for review, Mr. Hernandez-Torres argues that the BIA erred in in its findings regarding the government's acquiescence, the likelihood that his life would be in danger if he returned to Mexico, and his ability to relocate to a different part of Mexico to avoid being tortured.

A. *Government Acquiescence*

Mr. Hernandez-Torres first asserts that the IJ and the BIA erred by "ignoring the country conditions evidence that corroborates [his] fear of torture by corrupt police officers in Mexico." Pet'r Br. at 26 (boldface omitted). We disagree.

First, Mr. Hernandez-Torres appears to be trying to broaden the scope of his CAT claim by framing it in more general terms to include a fear of being tortured by all corrupt police officers throughout Mexico. But in his affidavit in support of his application for CAT relief, he explained that his fear was based on the police officers he implicated though the internal affairs investigation. For example, he stated "officers that I helped put in jail are now free and want revenge." R. at 284. He also feared retribution from the brother of Guillermo Escamilla (the leader of the theft ring). *See id*. ("Guillermo is still in jail, and I believe his brother has not stopped looking for me."); *id*. (noting that his sister reported two men "lurking outside of my

8

father's house" and stating "I do not know who else, but Guillermo's brother or other affiliated police officers, would want anything to do with my father and I am petrified that they are still after me").

Likewise, when he testified in support of his applications for relief, he stated that if he returned to Mexico he would be killed by the former police officers that he was involved in investigating because most of them have now finished their jail sentences. *See id*. at 213. He claimed that the government has no control over these people and speculates that they have now become involved with drug trafficking because they won't be able to work anywhere after they have been in a Mexican prison. *See id*. at 214.

Second, the agency did not ignore Mr. Hernandez-Torres's evidence about country conditions in Mexico. Instead, the IJ concluded that general evidence about police corruption in Mexico was insufficient to show government acquiescence with respect to Mr. Hernandez-Torres. As the IJ explained:

> [Mr. Hernandez-Torres] did not claim that any of those prosecuted have been reinstated to the police force or other government positions following their incarcerations, nor did he demonstrate any connection between current government officials and those former officials who the government successfully prosecuted for their corruption. The Court finds no indication that any current government official poses any threat to [Mr. Hernandez-Torres]. Without such a specific connection, [his] presentation of country reports and news articles showing corruption within the Mexican police and government as well as connections between drug traffickers and the police are insufficient to show government acquiescence.

*Id*. at 91. The BIA adopted the IJ's reasons for denying protection under the CAT and we may consult the IJ's decision for a more complete explanation of those

9

reasons. *See Uanreroro*, 443 F.3d at 1204. We see no error in the agency's consideration of Mr. Hernandez-Torres's general information about conditions in Mexico. *See Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 592 (3d Cir. 2011) ("[T]he existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his . . . return to that country." (internal quotation marks omitted)).

Next, Mr. Hernandez-Torres argues that the BIA's determination that the government would not acquiesce in his torture is not supported by substantial evidence. Again, we disagree.

The record shows that government officials did not turn a blind eye to police corruption and threats against Mr. Hernandez-Torres. Instead, the officials prosecuted the corrupt officers identified in Mr. Hernandez-Torres's internal investigation; tried to protect him by assigning extra police to guard him at Mr. Escamilla's sentencing; and transferred him to a different police unit at his request due to the threats. When considering similar factual circumstances in *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006), we upheld the BIA's conclusion that the petitioner had failed to establish that any torture he faced would be with the government's acquiescence. We noted evidence in the record showing the government's attempts to protect the petitioner by providing him information about his inclusion on a "death list" and financial assistance to reinforce security at his home in an attempt to prevent torture at the hands of a paramilitary group. *See id.*

10

The IJ and the BIA recognized that the government officials were not always able to protect Mr. Hernandez-Torres, but concluded that this inability to offer complete protection did not rise to the level of government acquiescence. We see no error in this conclusion. In *Ferry*, 457 F.3d at 1131, we recognized "that the government had attempted to protect individuals included on the death lists," and we did not require evidence showing that the government's efforts were successful in order to conclude that the government was not acquiescing in any potential torture. Other circuits have concluded that a government's inability to provide complete protection does not demonstrate government acquiescence. *See, e.g., Tamara-Gomez v. Gonzales*, 447 F.3d 343, 351 (5th Cir. 2006) (concluding that Colombian government's inability to provide complete security from guerilla group did not constitute government acquiescence); *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242-43 (11th Cir. 2004) (concluding that Peruvian government's inability to apprehend members of terrorist group that robbed and assaulted petitioner did not demonstrate government acquiescence).

B. *Current Threat and Ability to Relocate*

Mr. Hernandez-Torres also challenges the agency's determination that he failed to present evidence showing that the former police officers that he investigated continued to seek his whereabouts. We see no basis to disturb the agency's determination.

Although Mr. Hernandez-Torres testified about two occasions in 2005 when people approached his father and his father-in-law to ask about his whereabouts, he

11

was unable to offer evidence about the identities of the people looking for him. He also testified about an incident in 2012 when his sister reported unknown people loitering around her house. As the BIA explained, however, Mr. Hernandez-Torres "was not able to identify the persons that were seen by his sister or determine whom they were seeking." R. at 4. Mr. Hernandez-Torres's claim that these unknown people were looking for him with the intent to harm him is purely speculative. A CAT claim that is "based on a chain of assumptions and a fear of what might happen" is insufficient to meet the burden for protection under the CAT. *Matter of M-B-A-,* 23 I. & N. Dec. at 479-80.

Finally, Mr. Hernandez-Torres challenges the BIA's affirmance of the IJ's finding that he failed to show that he could not relocate to a part of Mexico where he is unlikely to be tortured. Mr. Hernandez-Torres bears the burden of showing that it is more likely than not that he will be tortured with the government's acquiescence if he is returned to Mexico. *See id*. at 477; 8 C.F.R. § 208.16(c)(2). In determining whether a petitioner has met this burden, the agency should consider "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured." 8 C.F.R. § 208.16(c)(3)(ii). Here, the BIA adopted the IJ's finding that Mr. Hernandez-Torres "ha[d] not shown that he was threatened by anything more than a small and geographically isolated group of people" and

12

therefore he failed to "show that he could not relocate to a part of Mexico where he [was] unlikely to be tortured."  R. at 4.[2]

The circumstances here are similar to those in *Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1083 (9th Cir. 2008), where the petitioner argued that "it was more likely than not that he would be tortured by . . . a drug cartel that had been involved in a violent turf war with members of [the petitioner's] extended family in the northern border regions of Mexico."  The Ninth Circuit determined that substantial evidence supported the denial of deferral of removal under the CAT because the petitioner "failed to establish that internal relocation within Mexico was impossible." *Id*. at 1084.  The same reasoning applies here.

Mr. Hernandez-Torres failed to show that the people who threatened him (the former police officers that he investigated and their family members and affiliates) were still looking for him and would be able to find him if he relocated to another part of Mexico.

---

[2] As the IJ further explained, "[Mr. Hernandez-Torres] has not shown that he was or is threatened by anything more than a relatively small and geographically isolated group of people, that this small group has an ongoing interest in finding him, or that the group maintains the sort of sophisticated nationwide network that would allow them to find [him] if he relocated to another region of Mexico."  R. at 92.

VI.  <u>Conclusion</u>

For the foregoing reasons, we deny the petition for review.  We grant

Mr. Hernandez-Torres's motion to proceed in forma pauperis.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

14