**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 4, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LUIS ALFREDO BLANCAS-LOZANO,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 21-9533
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

An Immigration Judge (IJ) denied Luis Alfredo Blancas-Lozano's application

for protection under the United Nations Convention Against Torture (CAT) and

granted him voluntary departure to Mexico.  The Board of Immigration Appeals

(BIA) upheld the IJ's order.  Mr. Blancas has filed a petition for review.  Exercising

jurisdiction under 8 U.S.C. § 1252(a)(4), we deny the petition.

---

   [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Mr. Blancas is a native and citizen of Mexico.  In 2018, the Department of Homeland Security served him with a Notice to Appear, charging him with removability as a noncitizen present in the United States without having been admitted or paroled, or for having arrived in this country at any time or place other than as the Attorney General designated.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).

Mr. Blancas conceded the charge against him but applied for withholding of removal under the CAT.  His testimony consists of an affidavit he submitted to the IJ. The IJ found Mr. Blancas credible and adopted his affidavit as the statement of facts.

In his affidavit, Mr. Blancas stated that in 2005, when he was fifteen, he was standing outside a store with his brothers and some friends near where he lived in Mexico.  A group of people from across the street started yelling at them that they were not welcome and had to leave.  Five members of the group armed with machetes, sticks, and rocks then attacked Mr. Blancas's group.  They punched Mr. Blancas, kicked him, and beat him with rocks.  He ran, but one of the people caught him and threatened that if Mr. Blancas was seen in that area again, they would beat or kill him.  Because there was no hospital in the area where he lived, his mother took care of him.  For a long time after this incident, Mr. Blancas did not travel more than a block from his house.

A few months later, four men from the earlier incident attacked Mr. Blancas while he was running errands with his mother in a nearby town.  They taunted Mr. Blancas, punched him, and hit him on the arm with a crowbar.  He was able to

knock one of the men down and escape. He drove to a nearby hospital to get care for his mother, who had lost consciousness.

Mr. Blancas did not report either attack to the police because he believes the Mexican police are untrustworthy and generally unwilling to investigate crimes unless the victim pays them. But when he returned home after the second attack, the police were at his house asking questions about it. Mr. Blancas felt they were accusing him of having started the fight, and an officer told him he could be jailed, which caused him to think the police were working for the attackers. Afterwards, Mr. Blancas decided not to leave his house unless he absolutely had to.

Based on these two attacks and associated threats he received at school, Mr. Blancas came to the United States in November 2005.

In his affidavit, Mr. Blancas also asserted he fears returning to Mexico because he will be tortured by the Huachicoleros, a gang or criminal organization in Mexico that steals fuel. The Huachicoleros have been known to conscript people to work for the gang. The group forced Mr. Blancas's brother-in-law to work for it by threatening his wife (Mr. Blancas's sister) and their children. There is a real danger he could be conscripted, Mr. Blancas asserted, because of the many fuel pipes in his area. He also claimed he is at high risk of being injured or harmed by criminal groups in Mexico who target Mexican citizens when they return after living in the United States for a long time.

The IJ found Mr. Blancas had not demonstrated it was more likely than not he would be tortured if he returns to Mexico. First, the IJ found the mistreatment

3

Mr. Blancas received in the two attacks was not sufficiently severe to qualify as past torture; although he was physically harmed, he did not go to the hospital. The IJ also observed those events occurred in 2005, and there was no evidence whether or why the attackers would still be interested in Mr. Blancas now, many years later. The IJ also found no evidence Mr. Blancas had any history with the Huachicoleros or that the Huachicoleros had targeted him in the past or would target him specifically if he returns to Mexico. Further, the IJ found it "reasonable for [Mr. Blancas] to relocate to another area of Mexico to avoid the harm in his hometown." R. at 65. The IJ explained Mr. Blancas could avoid the harm he feared by relocating, since both his attackers and the Huachicoleros were operating in his hometown, Mr. Blancas is "of working age," and "Mexico is large and very populous." *Id*.

The BIA "adopt[ed] and affirm[ed]" the IJ's decision and concluded the IJ's "factual findings" were "not clearly erroneous." R. at 3. The BIA reiterated some of the IJ's reasoning and added that Mr. Blancas's "argument that his sister and brother-in-law were targeted" by the Huachicoleros "does not show that he, in particular, would be targeted." *Id*. This petition for review followed.

## II. DISCUSSION

Where, as here, a single BIA member issues a brief order deciding the merits of an appeal, the BIA's order is the final order we review. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). But we may consult the IJ's decision if necessary to understand the grounds for the BIA's decision, especially where, as here, the BIA adopts the IJ's decision. *See id.* (noting it is "especially appropriate" to

4

look to the IJ's decision "where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion"). We review factual challenges to an order denying CAT relief for substantial evidence. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Under the substantial-evidence standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review legal determinations de novo. *Igiebor v. Barr*, 981 F.3d 1123, 1131 (10th Cir. 2020).

To be eligible for withholding of removal under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Mr. Blancas argues the IJ and BIA erred in finding that he failed to meet this standard. He contends his past treatment amounts to torture or at least supports a likelihood of future torture by the same group, particularly when accounting for the mental suffering they caused him. We identify no error.[1]

"Torture is defined as any act by which *severe* pain or suffering, whether physical or mental, is intentionally inflicted on a person." *Id.* § 1208.18(a)(1) (emphasis added). It "is an *extreme* form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Id.* § 1208.18(a)(2) (emphasis added). For "severe pain or

---

[1] Although Mr. Blancas lists three issues in his brief, his arguments overlap in certain respects. We therefore address the issues topically.

suffering" to warrant CAT relief, it must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1). In assessing the likelihood of torture, a fact-finder must consider all relevant evidence, specifically including "[e]vidence of past torture inflicted upon the applicant." *Id.* § 1208.16(c)(3)(i).

Here, Mr. Blancas was beaten twice but did not suffer severe physical or mental injuries. We have upheld agency findings that even more severe pain and suffering did not amount to persecution, let alone fall within the more severe category of torture. *See, e.g.*, *Xue v. Lynch*, 846 F.3d 1099, 1101-02 (10th Cir. 2017); *Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007).[2]

Mr. Blancas also contends the BIA erred in upholding the IJ's finding there was no evidence that the individuals who attacked him in 2005 would be interested in him thirteen years later. To support this contention, he offers his testimony that the Mexican police acted in collusion with his attackers and, more generally, have a custom of colluding with gangs. We do not see how those facts (assuming their

---

[2] Mr. Blancas asserts the IJ only "questioned whether [he] was even tortured" and the BIA "assumed [he] was harmed or tortured." Pet'r's Opening Br. at 17 n.6; *see also id.* at 20-21 (arguing the BIA "did not affirm the IJ that Mr. Blancas was not harmed or tortured"). This assertion rests on a misreading of the record. The IJ found "the mistreatment [Mr. Blancas] received in the two attacks in Mexico was not sufficiently severe to rise to the level of torture in the past." R. at 64. And the BIA determined the IJ had made no clear errors in his factual findings, affirming and adopting the IJ's decision. *See* R. at 3.

truth) bear on the likelihood that Mr. Blancas's attackers would harm or torture him if he returns to Mexico now.

Mr. Blancas suggests documentary evidence of human rights violations in Mexico—including torture, beatings, abuse, and mistreatment by security forces—supports the likelihood he would be tortured if he returns and that the agency failed to consider or mention such evidence. An IJ must consider country-conditions evidence. *See* 8 C.F.R. § 1208.16(c)(3)(iii)-(iv) (requiring consideration of country-conditions evidence, in particular any "gross, flagrant or mass violations of human rights within the country of removal, where applicable"). Although the IJ did not explicitly discuss the country-conditions evidence, he stated he had considered all the evidence. Mr. Blancas points to no specific parts of the country-conditions evidence suggesting it is more likely than not he would be tortured if he returns to Mexico, nor have we uncovered any. Thus, we have no reason to believe the IJ did not consider the documentary evidence. *See Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) ("The [IJ] is not required to write an exegesis on every contention. What is required is that [the IJ] consider the issues raised, and announce [his or her] decision in terms sufficient to enable a reviewing court to perceive that [he or she] has heard and thought and not merely reacted." (brackets and internal quotation marks omitted)); *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995) (explaining that the agency is not required to discuss all the evidence).

Mr. Blancas further argues that in determining the Huachicoleros would be unlikely to target him again, the BIA failed to seriously consider that the group had

7

previously targeted his sister and brother-in-law.  He contends that mistreatment a family member receives is relevant to a CAT claim, particularly where the fear of torture has the same basis.  But the BIA expressly observed this fact did not overcome the IJ's finding that the Huachicoleros had not directly targeted Mr. Blancas or shown any specific interest in him.  *See* R. at 3.  Mr. Blancas's argument effectively asks us to reweigh the evidence, which we may not do.  *See Vladimirov v. Lynch*, 805 F.3d 955, 960 (10th Cir. 2015) (explaining that when evaluating whether substantial evidence supports an agency's judgment, we do not "reweigh the evidence").  Mr. Blancas also claims the agency overlooked an article he submitted describing how the Huachicoleros torture and kill those who resist recruitment.  But nothing in that article shows it is more likely than not that the Huachicoleros would torture or conscript *Mr. Blancas* if he were to return to Mexico. We thus fail to see any legal or factual error casting doubt on whether substantial evidence supports the denial of CAT relief.

Even if the evidence suggested Mr. Blancas's 2005 attackers or the Huachicoleros would be likely to target him if he returns to his home-town area, the agency found he could avoid harm by relocating elsewhere in Mexico.  That was a proper consideration.  Mr. Blancas bore the burden of establishing eligibility for CAT withholding.  *See* 8 C.F.R. § 1208.16(c)(2).  And evaluating the likelihood a CAT applicant would be tortured involves consideration of "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured."  *Id.* § 1208.16(c)(3)(ii).

8

Mr. Blancas contends the BIA's relocation determination rests on an incorrect legal standard—whether he failed to show it was *impossible* to relocate. But the IJ did not apply this standard. The IJ found "it would be *reasonable* for [Mr. Blancas] to relocate in another area of Mexico to avoid the harm in his hometown that he fears." R. at 65 (emphasis added). Mr. Blancas's argument that the BIA applied an impossibility standard apparently rests on the BIA's use of the phrase "could not" in its decision: "We also affirm the [IJ's] conclusion that [Mr. Blancas] did not demonstrate that he *could not* relocate to a part of Mexico where he would not face a clear probability of torture from the individuals who harmed him in the past or the Huachicoleros." R. at 3 (emphasis added). Because the BIA affirmed the IJ's conclusion that relocation was reasonable, we consider the BIA's use of the phrase "could not" to be, at most, inartful drafting and not, as Mr. Blancas contends, the application of an erroneous legal standard.[3]

Finally, Mr. Blancas argues the BIA applied the wrong standard by failing to consider evidence that the police colluded with his attackers. This argument is misplaced. Under the CAT, Mr. Blancas must prove "it is more likely than not that [he] would be tortured if removed to [Mexico]." 8 C.F.R. § 1208.16(c)(2). Torture,

_____

[3] Our resolution of this argument does not require addressing Mr. Blancas's assertion that § 1208(c)(3)(ii) requires only that relocation be reasonable. This appears to be an open question in this circuit. *Compare Maldonado v. Lynch*, 786 F.3d 1155, 1163 (9th Cir. 2015) (en banc) (holding that § 1208.16(c)(3) does not require a CAT applicant "to prove that internal relocation is 'impossible'"), *with Hernandez-Torres v. Lynch*, 642 F. App'x 814, 821 (10th Cir. 2016) (unpublished decision relying on Ninth Circuit authority later overruled by *Maldonado* to suggest impossibility standard applies in CAT context).

by CAT definition, requires a showing of severe pain and suffering as well as government acquiescence to this pain and suffering. *See id.* § 1208.18(a)(1). The IJ denied Mr. Blancas's application because he failed to prove the requisite likelihood of severe pain and suffering. The BIA did not need to address government acquiescence to affirm the IJ's denial of Mr. Blancas's application.

### III. CONCLUSION

For the foregoing reasons, we conclude substantial evidence supports the agency's denial of Mr. Blancas's application for CAT withholding and the agency committed no legal error. We therefore deny the petition for review.

Entered for the Court


Veronica S. Rossman
Circuit Judge